UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBBIE LAMSON, JR.,

       Plaintiff,                                Hon. Janet T. Neff

v.                                                   Case No. 1:14-cv-759

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for disability benefits. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in

making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was born on June 22, 1989. (Tr. 90). Plaintiff applied for Supplemental Security Income benefits on May 12, 1997, alleging that he had been disabled since April 21, 1997, due to asthma and behavioral problems. (Tr. 90-92, 105). Plaintiff's application for benefits was granted in a decision dated February 23, 1999. (Tr. 270-79). A subsequent review determined that Plaintiff had experienced an improvement in his condition. (Tr. 280-81, 374-81, 712-18). Accordingly, Plaintiff's disability was deemed to have ended as of January 1, 2006. (Tr. 280-81, 374-81). Following an administrative hearing, this determination was affirmed in a decision dated January 29, 2010. (Tr. 282-94). Plaintiff appealed this determination to the Appeals Council, but before receiving a ruling, Plaintiff, on June 1, 2010, filed new applications for disability benefits alleging disability as of June 22, 2007. (Tr. 484-94). On September 28, 2011, the Appeals Council remanded the decision regarding the termination of Plaintiff's child disability benefits. (Tr. 296-99). On remand, resolution of Plaintiff's child disability claim was consolidated with his subsequently filed disability claims. (Tr. 298, 328).

On March 28, 2011, ALJ Nicholas Ohanesian conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 1007-1042). In a decision dated June 15, 2012, the ALJ determined that Plaintiff was not entitled to benefits. (Tr. 327-50). In a decision dated April 26, 2013, the Appeals Council again remanded the matter for further proceedings. (Tr. 353-56). On September 4, 2013, ALJ Ohanesian conducted a hearing at which Plaintiff, a vocational expert, and a medical expert testified. (Tr. 1043-1101). In a decision dated September 27, 2013, the ALJ again determined that Plaintiff was not entitled to benefits. (Tr. 13-41). Specifically, the ALJ concluded that termination of Plaintiff's child disability benefits was appropriate as Plaintiff had experienced

an improvement in his medical condition. With respect to Plaintiff's subsequent applications for benefits, the ALJ found that Plaintiff was not disabled. The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-8). Plaintiff subsequently initiated this pro per appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

Plaintiff's appeal raises two distinct issues: (1) the decision to terminate his child disability benefits and (2) the decision to deny his subsequent applications for disability benefits. Because the standards relative to these particular issues differs, they will be articulated separately.

A.  Continuation of Child Disability Benefits

Federal law obligates the Commissioner to periodically review whether a disabled child continues to be eligible for disability benefits. *See* 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). The Social Security regulations articulate a three-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. § 416.994(a). The first step is to determine whether the child has experienced "medical improvement[1] in the impairment(s) [he] had at the time of [the] most recent favorable determination or decision." 20 C.F.R. § 416.994(b)(1); *Tubbs v. Commissioner of Social Security*, 2013 WL 1305290 at *2 (W.D. Mich., Mar. 28, 2013). If the Plaintiff has not experienced any medical improvement, his disability will be deemed to continue

---

[1] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

unless an exception to the medical improvement rule applies.[2]  20 C.F.R. § 416.994(b)(1); *Tubbs*, 2013 WL 1305290 at *2-3.

If the claimant has experienced medical improvement, it must then be determined whether "the impairment(s) that [the Commissioner] considered at the time of [her] most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time."  20 C.F.R. § 416.994(b)(2); *Tubbs*, 2013 WL 1305290 at *3.  If the impairment(s) continues to meet or equal in severity the listed impairment in question, the claimant's disability will continue.  Otherwise, the analysis proceeds to step three.  20 C.F.R. § 416.994(b)(2); *Tubbs*, 2013 WL 1305290 at *3.

At step three, the Commissioner must determine whether the claimant is currently disabled pursuant to the rules for determining disability for children.  20 C.F.R. § 416.994(b)(3); *Tubbs*, 2013 WL 1305290 at *3.  A child is considered disabled if he suffers from a severe impairment or combination of impairments which meet, medically equal, or functionally equal an impairment identified in the Listing of Impairments.  20 C.F.R. § 416.994(b)(3); *Tubbs*, 2013 WL 1305290 at *3.

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability.  *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition."  *Id.*  Nevertheless, the burden of proof to

---

[2] These particular exceptions articulate circumstances in which a claimant's disability will be deemed to have terminated despite the absence of medical improvement.  *See* 20 C.F.R. § 416.994a(e)-(f).

establish that a claimant has experienced a medical improvement which supports a termination of benefits lies with the Commissioner. *See, e.g., Kennedy v. Astrue*, 247 Fed. Appx. 761, 764-65 (6th Cir., Sept. 7, 2007); *Couch v. Commissioner of Social Security*, 2012 WL 394878 at *10 (S.D. Ohio, Feb. 7, 2012).

        B.     Plaintiff's Subsequent Applications for Benefits

Plaintiff's subsequent applications for disability benefits are evaluated pursuant to the familiar five-step sequential process. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ observed that the most recent favorable determination finding that Plaintiff was disabled was the February 23, 1999 decision referenced above. (Tr. 20). The ALJ further observed that as of this date, Plaintiff was found to suffer from: (1) oppositional defiant disorder; (2) attention deficit hyperactivity disorder; and (3) asthma, severe impairments which were determined to functionally equal section 112.02 (Organic Mental Disorders) of the Listing of Impairments. (Tr. 21). With respect to the subsequent termination of Plaintiff's child disability benefits, the ALJ found as follows:

> Medical improvement occurred as of January 1, 2006 (20 CFR 416.994a(c)). As of January 1, 2006, the claimant's ADHD was under adequate control with medication, and he had no significant side effects with the medication. Although he had stopped regular attendance at his behavioral group therapy sessions, when he went, he demonstrated appropriate affect and participation (Exhibit B8F). During a mental status examination of October 2005, the claimant was able to interact appropriately. His affect was appropriate, and his hygiene and grooming were normal. He presented no abnormal movements, and his attention and concentration were determined [to be] adequate. Both the claimant and his grandmother acknowledged that the claimant's behavior had improved with his medication usage (Exhibit B4F).
>
> On December 26, 2005, the claimant's grandmother and guardian reported that although the claimant had asthma, he did not have any

significant asthma attacks, hospitalizations, or emergency room visits for asthma (Exhibit B8E). Indeed, Michigan State University-Kalamazoo Center for Medical Studies (MSU-KCMS) records substantiated that the claimant had no significant asthma or other respiratory concerns (Exhibit B7F).

The medical evidence supports a finding that as of January 1, 2006, there had been a decrease in medical severity of the claimant's oppositional defiant disorder and ADHD impairments present at the time of the CPD. I determine that medical improvement occurred as of January 1, 2006.

As of January 1, 2006, the impairments that the claimant had at the time of the CPD did not meet or medically equal listing 112.02 of 20 CFR Part 404, Suhpart P, Appendix 1 (the Listing of Impairments) as that listing was written at the time of the CPD. In addition, from January 1, 2006 through June 21, 2007, when the claimant attained age 18, all of the impairments that the claimant had did not meet or medically equal any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

In making this finding, I afford great weight to the testimony of the medical expert at the hearing who, after reviewing the medical record and hearing the claimant's testimony, assessed that the claimant had no impairment the severity of which met or equaled a listed impairment at all times pertinent to this decision. In addition, I give great weight to the conclusions of the State agency medical consultants at Exhibits B5F and B9F, inasmuch as their conclusions are consistent with the claimant's medical presentation as of January 1, 2006 and from January 1, 2006 through June 21, 2007.

I find, therefore, that as of January 1, 2006, the impairments that the claimant had at the time of the CPD did not meet or medically equal listing 112.02 as that listing was written at the time of the CPD. In addition, from January 1, 2006 through June 21, 2007, when the claimant attained age 18, all of the impairments that the claimant had did not meet or medically equal any listed impairment in Appendix I, Part B (for children) and Part A (for adults).

(Tr. 21-22).

The ALJ next determined that Plaintiff, as of attaining age 18, suffered from: (1) asthma; (2) borderline intellectual functioning; (3) depressive disorder; (4) anxiety disorder; (5)

personality disorder; (6) attention deficit hyperactivity disorder; and (7) substance dependence disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 30-35).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff, since attaining age 18, retained the capacity to perform medium work subject to the following limitations: (1) he can frequently perform orthopedic maneuvers; (2) he must avoid concentrated exposure to pulmonary irritants and extreme cold; (3) he is limited to simple, routine, and repetitive tasks in a work environment with no production rate or fast-paced work and with only occasional change in the work setting; (4) he cannot have interaction with the public; (5) he can have interaction with co-workers less than 10 percent of his shift and cannot perform tandem tasks; and (6) he can have interaction with supervision a maximum of 1-2 times per shift. (Tr. 35). In support of this determination, the ALJ discussed at great length the evidence of record. (Tr. 30-39).

The ALJ found that Plaintiff has no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question

vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 38,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 1086-95). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits regarding his June 1, 2010 applications.

C.     Issues Asserted by Plaintiff

As previously noted, Plaintiff is pursuing the present appeal without benefit of counsel. In support of his claim for relief, Plaintiff has submitted a two-page brief which raises, albeit superficially, several issues none of which are persuasive.

1.     Fairness of the Administrative Hearing

Plaintiff first asserts, "I wanted witnesses and none were allowed." (Dkt. #10 at Page ID# 1131). Plaintiff is presumably referring to the administrative hearings. Plaintiff was represented by counsel at both administrative hearings before ALJ Ohanesian. (Tr. 1007-1101). There is no indication from the transcripts of these hearings that Plaintiff's ability to introduce evidence or present witness testimony was in any way impaired, limited, or thwarted. In fact, at the latter

hearing, Plaintiff's counsel was specifically asked if he wanted to call as a witness anybody other than Plaintiff, to which counsel responded, "no." (Tr. 1049). Plaintiff's counsel was also afforded ample opportunity to question the medical and vocational experts that appeared. Finally, there is no evidence in the record that Plaintiff or his attorney were not provided adequate notice of these hearings. Plaintiff has the right to a "full and fair" hearing. *See Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971)). Plaintiff has failed to articulate any argument that this right was violated. Accordingly, this argument is rejected.

2.      Plaintiff's Compliance with Treatment Directives

Plaintiff next asserts, "I am unable to stay on medication or receive counseling because I am on and off Medicaid and have found no long term employment to get insurance coverage." (Dkt. #10 at Page ID# 1131). Where a claimant fails to obtain treatment or comply with treatment directives, the ALJ has an obligation to determine whether the claimant's failure is due to matters beyond his control such as an inability to pay for the treatment or medication in question. *See, e.g., Martin v. Commissioner of Social Security*, 2014 WL 700414 at *10-11 (W.D. Mich., Feb. 24, 2014).

The ALJ recognized that "there is some question as to whether the claimant has had medical compliance with his recommended and prescribed medical treatment." (Tr. 36). As the ALJ noted, however, there is ample evidence that Plaintiff's non-compliance was not the result of factors beyond his control, but was instead simply the product of poor decision making. (Tr. 36-37). Moreover, as Plaintiff testified at the latter administrative hearing, he was presently spending "on average" one hundred dollars monthly for marijuana. (Tr. 1061-62). Plaintiff can hardly obtain

relief based on an alleged inability to pay for medication when he simultaneously possesses sufficient money to regularly purchase illegal drugs. *See, e.g., Rainwater v. Colvin*, 2015 WL 1807113 at *13 (W.D. Ark., Apr. 21, 2015). Finally, as for Plaintiff's assertion that his inability to comply with treatment directives is a result of his inability to obtain work, as the ALJ noted, the record reflects "a certain degree of lack of motivation on the claimant's part to work." (Tr. 37). Accordingly, this argument is rejected.

3.  Development of the Medical Record

Plaintiff next asserts, "I have medical and mental limitations and behavior not fully disclosed because I have not had the care and treatment I need." (Dkt. #10 at Page ID# 1131). Plaintiff has failed to identify the additional impairments from which he allegedly suffers.

Plaintiff bears "the ultimate burden of producing sufficient evidence to show the existence of a disability." *Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000) (citations omitted). As the relevant Social Security regulations make clear, it is Plaintiff's responsibility to provide the evidence necessary to evaluate his claim for benefits. *See* 20 C.F.R. §§ 404.1512-1514 and 416.912-914. As the Supreme Court has observed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Only under "special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, *and* is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003) (emphasis added). Plaintiff was represented at the

administrative hearing and there is no evidence that his counsel was incapable of advocating Plaintiff's position or was unfamiliar with the relevant hearing procedures. Moreover, no assertion or argument was made at either administrative hearing that the medical record was in any way insufficient or incomplete. As the ALJ had no heightened duty to develop the record in this matter, this argument is rejected.

### 4. The ALJ's Credibility Assessment

Plaintiff states that, "In one of the briefs I believe a statement was made that I go shopping. I don't go shopping I stay with my daughter." (Dkt. #10 at Page ID# 1131). In assessing Plaintiff's credibility, the ALJ noted that Plaintiff "also has reported being able to go shopping." (Tr. 37). The Court interprets Plaintiff's statement as challenging the ALJ's credibility assessment.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ examined in great detail the evidence in this matter and determined that Plaintiff was not entirely credible. (Tr. 35-39). This determination is supported by substantial evidence. Plaintiff's only challenge to this determination is that the ALJ inaccurately found that he is "able to go grocery shopping." First, the ALJ did not find that Plaintiff actually went shopping, only that he possesses the ability to do so. This is certainly supported by the record. Moreover, there is evidence in the record indicating that Plaintiff does, in fact, go shopping on occasion. (Tr. 641, 1058-59). In sum, the ALJ's credibility determination complies with the relevant legal standard and is supported by substantial evidence. Accordingly, this argument is rejected.

5. The ALJ's Reliance of the Vocational Expert's Testimony

Finally, Plaintiff's brief contains statements which the Court interprets as challenging the ALJ's reliance on the vocational expert's testimony. As previously noted, the vocational expert testified that there existed in the state of Michigan approximately 38,000 jobs which Plaintiff could perform despite his limitations.

First, Plaintiff challenges whether the 38,000 jobs identified by the ALJ could be performed by an individual with his education level and medical limitations. (Dkt. #10 at Page ID# 1131). While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 38,000 such jobs in the state of

Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. Furthermore, Plaintiff's argument that the janitorial jobs identified by the vocational expert are beyond the ability of somebody, like himself, who failed to successfully complete high school is unpersuasive. Records of Plaintiff's intellectual ability and performance are certainly not incompatible with janitorial work. (Tr. 177-80, 233-35, 241-50, 680-711, 959-65, 973-77). The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

Plaintiff next asserts, "I do not do well at all in the public." (Dkt. #10 at Page ID# 1132). Plaintiff's limitations in this regard are adequately accounted for in the ALJ's RFC determination. Accordingly, this argument is rejected. Finally, Plaintiff states, "I was able to work at a greenhouse because my father worked there and supervised my work." While not stated, it appears that Plaintiff is arguing that he was successful in this particular job only because he received special consideration or supervision from his father. There is no evidence in the record, however, that such was the case. Moreover, there is no indication that the ALJ placed any significance on Plaintiff's greenhouse work. As the ALJ recognized, such work did not constitute substantial gainful activity. (Tr. 30). Finally, Plaintiff's vocational limitations are sufficiently accounted for in the ALJ's RFC determination. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th

Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 9, 2015          /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge